# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>   vs.<br><br>GARY S. GERLAY,<br>a/k/a GARY S. GERLAY SZELES,<br>d/b/a/ AURORA PAIN MANAGEMENT,<br><br>          Defendant. | Case No. 3:09-cr-00085-JWS-JDR<br><br>**RECOMMENDATION REGARDING<br>DEFENDANT'S MOTION TO<br>DISMISS INDICTMENT**<br><br>(Docket No. 31) |

## I. Background

Defendant Gerlay filed a *Motion to Dismiss Indictment* at Docket 31. The Government filed its opposition at Docket 56. Mr. Gerlay argues that all charges in the indictment should be dismissed because the charging statues violate the Fifth and Tenth Amendments to the Constitution. Gerlay states that "Section 841 of Title 21, on its face and [as] applied to this case, violates Due Process in that the law fails to provide adequate notice as to when a doctor commits an offense for prescribing medications that also happen to be controlled substances."[1] Additionally, Gerlay argues that 18 U.S.C. § 1347 similarly violates the Due Process Clause. Defendant further asserts the indictment offends the Tenth Amendment "by crossing the line of the proper regulation of controlled substances into the arena of regulating the

---

[1]*Memorandum in Support of Motion to Dismiss Indictment*, Docket 32, p. 1.

practice of medicine, a role reserved to the individual states."[2]  In response, the government asserts that the case law on the issue is well-settled and that the Due Process Clause is not violated by either statute.

The Defendant was indicted for improperly distributing Schedule II, II and IV drugs in his pain management practice through Aurora Pain Management.[3]  Counts 1-64 allege Mr. Gerlay unlawfully distributed and/or dispensed a controlled substance in violation of 21 U.S.C. §§ 841(a), (b)(1)(C), (b)(1)(D), and (b)(2).[4]  Counts 65-97 allege Health Care Fraud in violation of 18 U.S.C. § 1347(1) for violations of the law related to the treatment of Medicaid patients.[5]  Gerlay argues that the statutes should be declared void for vagueness both on their face and as applied.

## II.  Void for Vagueness Challenge

A brief examination of the Void for Vagueness doctrine is helpful.  This Recommendations examines both the facial and as applied challenges in detail below.  Supreme Court precedent makes clear that courts should use the void for vagueness remedy sparingly.[6]  In *Schwartzmiller v. Gardner*, the court recalled that

---

[2]*Id.*

[3]*First Superceding Indictment*, Docket 70.

[4]*Id.*

[5]*Id.* at p. 10.

[6]*Schwartzmiller v. Gardner*, 752 F.2d 1341, 1364 (1984).

2

"'under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws.' This consideration limits the strong medicine of striking down statutes as facially vague."[7]

A statute may be challenged as unconstitutionally vague on its face or as applied. As the Court noted in *Schwartzmiller*, "a 'facial' vagueness analysis is mutually exclusive from an 'as applied' analysis."[8] The Court further noted that "[t]he threshold question in any vagueness challenge is whether to scrutinize the statute for intolerable vagueness on its face or whether to do so only as the statute is applied in the particular case."[9] Here, the Court is asked to do both.

"The void for vagueness doctrine is concerned with a defendant's right to fair notice and adequate warning that his conduct runs afoul of the law."[10] The Ninth Circuit has defined the void for vagueness doctrine. The court in *United States v. Wunsch* held that a "[s]tatute is void for vagueness when it does not sufficiently identify the conduct that is prohibited."[11] Defendant correctly notes that the Due Process Clause requires a statute to be sufficiently clear so as not to cause persons "of common intelligence . . . necessarily [to] guess at its meaning and [to] differ as

---

[7]*Id.* (quoting *Broadrick v. Oklahoma* 413 U.S. 601, 610-11 (1973)).

[8]*Id.* at 1346.

[9]*Id.*

[10]*Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1077-78 (1991).

[11]84 F.3d 1110, 1119 (9th Cir. 1996).

3

to its application[.]"[12]

Statutes need not be "written with 'mathematical' precision,"[13] "but they must be intelligible, defining a 'core' of proscribed conduct that allows people to understand whether their actions will result in adverse consequences."[14] Courts are to give statutes with criminal penalties more scrutiny under the void for vagueness evaluation.[15] "In addition to defining a core proscribed behavior to give people constructive notice of the law, a criminal statute must provide standards to prevent arbitrary enforcement."[16] The court in *Forbes* further noted that "a statute would be

---

[12]*Connally v. General Constr. Co.*, 268 U.S. 385, 391 (1926); *see Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) (Laws which are insufficiently unclear are void for three reasons: "1) to avoid punishing people for behavior that they could not have known was illegal; 2) to avoid subjective enforcement of the laws based on arbitrary or discriminatory interpretations by government officers; and 3) to avoid any chilling effect on the exercise of First Amendment freedoms.").

[13]*Forbes v. Napolitano*, 236 F.3d 1009, 1011 (9th Cir.2000) (quoting *Grayned* at 108-09.

[14]*Id.* at 1011 (quoting *Planned Parenthood v. Arizona*, 718 F.2d 938, 947 (9th Cir.1983) (holding that a statute is void for vagueness if persons of common intelligence must necessarily guess at its meaning)).

[15]*Id.* at 1011.

[16]*Id.* (citing *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999).

4

impermissibly vague even if it did not reach a substantial amount of constitutionally protected conduct [without clear guidance on standards], because it would subject people to the risk of arbitrary deprivation of liberty in itself officesive to the Constitution's due process guarantee."[17]

### A.  Facial Challenge

A statue is unconstitutionally vague on its face "if 'no standard of conduct is specified at all,' that is, if the statute is 'impermissibly vague in all of its applications.'"[18]  Whether a court can find a statute facially vague depends on whether the statute impinges on or chills a constitutionally protected conduct or falls into a "disfavored category" of statutes.[19]

In *Nunez v. City of San Diego*, a challenge to San Diego's city juvenile curfew ordinance, the Ninth Circuit outlined a two-prong test for facial vagueness challenges: "the ordinance must (1) define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited; and (2) establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory

---

[17]*Id.* at 1011-12 (citing *Smith v. Goguen*, 415 U.S. 566, 575 (1972)).

[18]*Parker v. Levy*, 417 U.S. 733, 755 (1974) (quoting *Coates v. City of Cincinnati*, 402 U.S.  611, 614 ( 1971)); (quoting *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982) (*Flipside*)).

[19]*Schwartzmiller* at 1348.

manner."[20] The Ninth Circuit cited precedent in *United States v. Mussry*, stating that "[i]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand."[21] Based on this precedent, the Court determined that it need only "decide whether the defendants had fair notice that the conduct that they allegedly engaged in was prohibited."[22] In *Nunez*, the Ninth Circuit stated, regarding facial vagueness challenges, that "[t]he need for definiteness is greater when the ordinance imposes cirminal penalties on individual behavior or implicates constitutionally protected rights than when it regulates the economic behavior of businesses."[23] The Court found that the greater "need for definiteness" was present in *Nunez* because the ordinance "restrict[ed] individual freedom through criminal law."[24]

No similar restriction on individual freedom is alleged in Mr. Gerlay's

---

[20]114 F.3d 935, 940 (9th Cir. 1997).

[21]726 F.2d 1448, 1454 (9th Cir. 1984) (quoting *United States v. Mazurie,* 419 U.S. 544 (1975)).

[22]*Id.*; *see also*, *United States v. Kirkham*, 129 Fed.App'x. 61, 71 (5th Cir. 2005) (In a void for vagueness challenge of 18 U.S.C. § 1347, the court held that "[e]ach vagueness challenge that does not involve First Amendment freedoms must be examined in light of its individual facts and circumstances.") (citation omitted).

[23]*Nunez* at 940.

[24]*Id.*

Case 3:09-cr-00085-JWS   Document 77   Filed 12/11/09   Page 6 of 23

case.  Looking at *Nunez* and *Mussry*, it is clear that this Court need not engage in a evaluation of whether the statute is void for vagueness on its face since there are no implications of restriction of freedom or First Amendment rights or a chilling effect on constitutionally protected rights.   Rather, the Court can turn to Mr. Gerlay's allegations that the statute is void for vagueness as applied to his alleged conduct. Mr. Gerlay's requests to find the statutes void for vagueness on their face should be DENIED.

### B.  Void for Vagueness as Applied

### 1.  18 U.S.C. § 1347

Counts 65-97 allege Health Care Fraud in violation of 18 U.S.C. § 1347(1) for violations of the law related to the treatment of Medicaid patients.[25]  Title 18, section 1347(1) of the United States Code states:

> Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice– (1) to defraud any health care benefit program . . . in connection with the delivery or payment for heath care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both . . . .[26]

Mr. Gerlay alleges that the statute should be declared void for vagueness as applied

---

[25] *First Superceding Indictment*, Docket 70.

[26] 18 U.S.C. § 1347(1).

7

to his case.

In *United States v. Garcia*, the court examined the statute under a void for vagueness challenge and stated that "[a] 'scheme or artifice to defraud' has long been construed to mean any deliberate plan of action or course of conduct by which someone intends to deceive or cheat another of something of value."[27]  The court noted, when comparing the statute to mail and wire fraud statutes, that wire and mail fraud statutes have repeatedly withstood vagueness challenges.[28]  Noting that Medicare regulations are "admittedly complex," the court held that "the statutes defendants are charged with violating provide relatively straightforward descriptions of fraud and conspiracy to commit fraud, and thus provide defendants with sufficient notice as required by the Fifth Amendment."[29]

Case precedent demonstrates that the language in 18 U.S.C. § 1347

---

[27]No. C-09-236, 2009 U.S. Dist. Lexis 44482 (S.D.Tex. May 26, 2009); *see also United States v. Kirkham*, 129 Fed.App'x 61 (5th Cir. 2005) ("Each vagueness challenge that does not involve First Amendment freedoms must be examined in light of its individual facts and circumstances.").

[28]*Garcia* at *16; *see United States v. Daniels*, 247 F.3d 598, 600 (5th Cir. 2001) (discussing mail fraud statute); *United States v. Gray*, 96 F.3d 767, 776-77 (5th Cir. 1996) (wire fraud); *see also United States v. Franklin-El*, Nos. 06-40011-01, 06-40011-02-WEB, 2007 WL 594724 (D.Kan. Feb. 20, 2007).

[29]*Garcia* at *16.

8

withstands a void for vagueness challenge. As the Defendant has raised no allegations which are distinguishable from case law on this issue, Defendant's request to find the statue unconstitutional on vagueness grounds should be DENIED.

### 2. 21 U.S.C. § 841

Title 21 of the United States Code, the Controlled Substances Act (CSA), lays out categories of prohibited conduct regarding controlled substances.[30] The relevant portions upon which Mr. Gerlay was indicted - 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(1)(D), and (b)(2) - state:

> (a) Unlawful acts
>
> > Except as authorized by this subchapter, it shall be unlawful for any person knowing or intentionally –
> >
> > > (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, a controlled substance . . . .
>
> (b) Penalties
>
> > Except as otherwise provided in section 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows . . . .[31]

The court in *United States v. Prejean*, described sections 841 and 842 as

---

[30] 21 U.S.C. §§ 841-843.

[31] *Id.*

9

prohibiting "various types of unauthorized distribution or dispensation of controlled substances by DEA 'registrants' like pharmacists or doctors."[32] Early litigation focused on whether physicians could be prosecuted under section 841. The prohibited acts under §§ 842 and 843 are considered "more or less technical violations"[33] of the CSA with penalties "less severe than under *Section 841*."[34] In *United States v. Moore*, the Supreme Court considered whether physicians must be prosecuted under §§ 842 and 843 or whether they could be subject to the penalties in § 841.[35] The Court held that § 841 applied to "any person" and that there was no exemption for doctors for activities not authorized under the CSA thus subjecting them to criminal prosecution.[36] Following *Moore*, lower courts were left to determine what activities would be considered "outside the scope of professional practice to the degree that would subject a DEA registrant to criminal liability under 21 U.S.C. § 841."[37]

Defendant argues that the terminology in § 841 is so vague that the statute

---

[32]429 F.Supp.2d 782, 800 (E.D.La. 2006).

[33]*United States v. Vamos*, 797 F.2d 1146, 1152 n.1 (2d Cir. 1986) (citing H.R.Rep. No. 91-1444, 1970 U.S.C.C.A.N. 4566, 4567).

[34]*Prejean* at 800 (emphasis in original).

[35]423 U.S. 122, 124 (1975).

[36]*Id.* at 131-32.

[37]*Prejean* at 800.

10

violates the Due Process Clause of the Fifth Amendment. In *Mussry*, the defendants were accused of violating involuntary servitude laws. Defendants argued that they did not violate the laws against involuntary servitude because they did not use physical force, or threaten physical force, to cause persons to remain under their control. They challenged the statute as unconstitutionally vague claiming that idea that under the statutory scheme, one could hold a person in involuntary servitude without the use or threat of physical force would render the statute so vague "that they would violate the due process clause of the fourteenth amendment."[38] While the challenged statute is not the same as the statute in the instant matter, the analysis for vagueness is analogous.

The *Mussry* Court noted that "[i]n order to survive a vagueness challenge, 'a penal statute [must] define the criminal offense with sufficient definiteness [so] that ordinary people can understand what conduct is prohibited in a manner that does not encourage arbitrary and discriminatory enforcement.'"[39] However, a penal statute "should not be so narrowly 'construed as to interfere with the federal government's

---

[38]*Mussry* at 1454.

[39]*Id.* (quoting *Kolender v. Lawson*, 461 U.S. 352 (1983) (citations omitted)); *see also Dunn v. United States*, 442 U.S. 100, 112 (1979) (citing *Grayned* at 108 ("[N]o individual [may] be forced to speculate, at peril of indictment, whether his conduct is prohibited.")).

11

ability to efficiently administer its criminal laws.'"[40] The language in the violated statute in *Mussry* was "not the most precise."[41] But, the court noted that the language was "not so opaque that ordinary people would not have notice that the conduct allegedly engaged in by the defendants was prohibited."[42] And, while "close questions may arise in interpreting the language of a criminal statute, that alone does not render a statute unconstitutionally vague."[43] The court also found that the language was not overly broad so as to create "the potential for arbitrary law enforcement."[44] The court, therefore, found the statute provided notice to the defendants that their conduct was prohibited and the void for vagueness challenge failed.

Here, the Defendant states that § 841 does not give fair notice to him that his actions violated the law. Defendant argues that the facts of his case is distinguishable from other cases where physicians violated § 841 because the

---

[40]*Id.* at 1455 (quoting *In re Subpoena of Persico*, 522 F.2d 41, 64 (2d Cir.1975) (quoted in *United States v. Prueitt*, 540 F.2d 995, 1002 (9th Cir.1976), *cert. Denied sub nom., Temple v. United States*, 429 U.S. 1063 (1977)).

[41]*Id.*

[42]*Id.*

[43]*Id.*; *see Boyce Motor Lines v. United States,* 342 U.S. 337, 340; *United States v. Douglass*, 579 F.2d 545, 548 (9th Cir.1978).

[44]*Mussry* at 1455.

alleged violations in this case are less severe and less obvious than similar cases and because his area of medicine, pain management, does not have a widely accepted standard for professional guidelines for distribution of narcotics to treat chronic pain. Therefore, because the facts of his case are distinguishable and the defined guidelines in pain management practice vary widely, Defendant concludes that he did not have fair notice his alleged actions violated § 841.

It is true that the cases cited by the Defendant where doctors were prosecuted successfully in the Ninth Circuit under § 841 are somewhat factually distinguishable. In *United States v. Rosenberg*, undercover agents went into the doctor's office, without any claim of medical disability and obtained controlled substances.[45] In *United States v. Boettjer*, the same factual scenario played out.[46] In *United States v. Feingold,* the defendant prescribed drugs to known addicts, to people he never examined, to people he had never met, and to undercover agents who told him they wanted narcotics.[47]

The court in *Boettjer* stated that "[i]n order for a prescription for any controlled substance to be effective it 'must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.'"[48] The

---

[45]515 F.2d 190 (9th Cir. 1975).

[46]569 F.2d 1078 (9th Cir. 1978).

[47]454 F.3d 1001 (9th Cir. 2006).

[48]*Boettjer* at 1080 (quoting 21 C.F.R. § 1306.04(a)).

13

facts in the above-cited cases clearly violate the law. Arguably, these cited offenses are more obviously illegal than Mr. Gerlay's alleged actions of prescribing to patients who had identifiable health issues which presumably caused them chronic pain. Gerlay argues that physicians in his area of specialty, pain management, are particularly difficult to prosecute under § 841 because there is no consensus in the medical community on a standard of care for chronic pain patients. The area of pain management arguably has more fluid definitions of permissible practice than other areas of medicine. This, however, is an issue for trial, and not properly decided as part of this motion.

Prosecuting physicians under § 841 for actions taken as part of a pain management practice may be a more difficult road than with other areas of medicine. Regardless, it is clear under the decision in *United States v. Moore*, that § 841 is not unconstitutionally vague as applied to physicians.[49] The court in *United States v. Birbragher* stated that "*Moore* held a physician could be charged with criminal conduct under the CSA for dispensing drugs outside the usual course of the physician's medical practice."[50] The Fifth Circuit Court of Appeals also held that § 841 as applied to a physician is not unconstitutionally vague in *United States v. Collier*.[51] The court specifically considered whether the phrase "in the course of

---

[49]423 U.S. 122 (1975).

[50]576 F.Supp.2d 1000, 1012 (N.D.Iowa 2008).

[51]478 F.2d 268 (5th Cir.1973).

14

professional conduct" was vague and held that it was not stating "statutes affecting medical practice need not delineate the precise circumstances constituting the bounds of permissible practice."[52]

In *Prejean*, the court examined the void for vagueness doctrine as applied to the prosecution of physicians for distribution of controlled substances under § 841.[53] The defendants in *Prejean* argued that "the statute should be considered void for vagueness because the medical community has not established clear, nationwide standards for what is considered 'legitimate medical purpose' in the field of pain management," the argument Gerlay makes in his motion.[54] Referencing the decision in *In re Skinner*, the court acknowledged that "there is no national standard on what is considered 'legitimate medical purpose' or 'professional practice' regarding pain management.[55] The court held that despite the lack of a clear national standard, the statute was not void for vagueness.[56] The court went on to state that "[t]he Fifth Circuit found the term 'professional practice' was not unduly vague. While the term

_____

[52]*Id.* at 272.

[53]429 F.Supp.2d 782.

[54]*Id.* at 805.

[55]*Id.* (citing 60 Fed.Reg. 62, 877, 62,891 (Dec. 7, 1995) ("the medical community has not reached a consensus as to the appropriate level of prescribing controlled substance in the treatment of chronic pain patients").

[56]*Id.*

15

'professional practice' involved a certain amount of professional judgment and discretion, 18 U.S.C. § 841 prosecutes physicians who act as drug pushers and thus was not standardless."[57]

In *Forbes*, the court described the void for vagueness doctrine by stating that while "constructive, rather than actual notice is required, individuals must be given a reasonable opportunity to discern whether their conduct is proscribed so they can choose whether or no to comply with the law."[58]

*Prejean* reiterates that "case law makes clear that consistent and pervasive violations of state regulations and DEA regulations on medical practice and dispensing of controlled substances can be evidence of a defendant's criminal liability under 21 U.S.C. § 841."[59] The *Prejean* court concludes, then, that defendants who have been subjects of a state investigation regarding their medical license for violations of professional standards "can hardly claim that he or she was unaware that his or her actions were potentially criminal under section 841 when he

---

[57]*Id.* (citing *Collier*, 478 F.2d at 271-272).

[58]236 F.3d 1009 (9th Cir.2000) (citing *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03 (1966)).

[59]*Prejean* at 805 (citing *United States v. Alerre*, 430 F.3d 681, 691 (4th Cir. 2005) ("evidence that a physician's performance has consistently departed from accepted professional standards . . . may properly be relevant to establish that the physician contravened the criminal standard of liability.").

16

or she has consistently violated accepted standards of professional practice."[60]

Mr. Gerlay also had notice that his actions in dispensing pain medication "knowingly and intentionally not for a legitimate medical purpose, and knowingly and intentionally outside the usual course of professional medical practice, did knowingly and intentionally distribute and dispense, and cause to be distributed and dispensed" to the patients named in *First Superceding Indictment.*[61] The language of 21 U.S.C. § 841 prohibits the distribution of controlled substances, unless the distribution is authorized by the statute.[62] The government asserts that Mr. Gerlay's actions in prescribing and distributing controlled substances to his patients was done in a manner outside the scope of the usual course of professional medical practice and not for a legitimate medical purpose. The government argues that Mr. Gerlay knew or should have know that his conduct was prohibited based on the language of the statue and case precedent. There is ample case precedent describing prosecution for unlawful distribution of controlled substances by physicians under 21 U.S.C. § 841. The parties have cited such cases.

In addition to notice through the language of the statute and case law, Mr. Gerlay was previously subject to professional investigation by the New Mexico Board

---

[60]*Id.*

[61]*First Superceding Indictment*, Docket 70, p. 13 - 25.

[62]*See* 21 U.S.C. § 841.

17

of Medical Examiners.[63]  He admitted "by Stipulation . . . that he improperly and misused prescriptions for controlled substances."[64]  While this action was a civil and not criminal matter, Mr. Gerlay had notice that his actions were in violation of the law.  Additionally, his practice in Alaska was subject to proceedings with the Alaska State Medical Board and his license was suspended with a finding that his practice with the Aurora Pain Management Clinic posed a "clear and immediate danger to the public health and safety."[65]

The *Prejean* defendants argued that they were simply charged with over-prescribing drugs and that based on case law review of what has been alleged in other prosecutions they did not have sufficient notice that over-prescribing subjects them to a § 841 violation.[66]  This argument is similar to Gerlay's suggestion that the government's allegations in his case involve much less obvious violations of § 841 than other prosecutions in the Ninth Circuit.   *Prejean* responds that if over-prescription was the only allegation in the case of their defendants that the analysis for void for vagueness notice might be different but that the defendants are alleged to have done "much more than over-[prescribe] in this case: there are also allegations that the Defendants violated professional standards in the handling of

---

[63]*First Superceding Indictment*, Docket 70, p. 2.

[64]*Id.*

[65]*Id.*

[66]*Prejean* at 805-06.

18

prescription medications, the management of patient records, and the time allotted for patient evaluation by physicians. All of these actions also could subject the Defendants to criminal liability under section 841. . . ."[67]

Mr. Gerlay faces similar charges that he failed to prescribe narcotics for legitimate medical purposes. The government also alleges Gerlay failed to conduct adequate physical examination of patients, ignored test results as the physicians did in *Moore* and *Feingold* and prescribed drugs to patients who were suspected or former addicts.[68]

Title 21, Section 841 of the United States Code is not void for vagueness neither facially nor as applied to Gerlay. Defendant had adequate constructive notice through the language of the statute and case law that his alleged actions triggered a violation of the statute. Additionally, Defendant had notice that his alleged actions were violative through civil actions taken by the Medical Boards in both New Mexico and Alaska.

III. Tenth Amendment violation as to 21 U.S.C. § 841

The Tenth Amendment states that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the

---

[67] *Id.*

[68] *See Opposition to Motion to Dismiss Indictment*, Docket 56, p. 3; *First Superceding Indictment*, Docket 70, pp. 26-35.

states respectively, or to the people." Defendant alleges that 21 U.S.C. § 841 violates the Tenth Amendment by giving the federal government the right to regulate the practice of medicine, a right reserved to the states, by allowing prosecutors to define the meaning and scope of "legitimate medical practice."[69] As Defendant notes in his *Memorandum* at Docket 32, "[t]he law sets forth two recognized and essential requirements for the lawful distribution of controlled substances by doctors."[70] The first requirement is that prescriptions must be issued for a legitimate medical purpose and the second is that the distribution should be done within the usual course of professional medical practice.[71]

The *Prejean* court was asked to determine whether the use of local, state definitions of "legitimate medical practice" violated the Tenth Amendment and whether there was a nationwide standard for "legitimate medical practice" with respect to pain management.[72] The court in *Prejean*, when confronted with a challenge to § 841, noted that "the majority opinion in *Gonzales* [*v. Oregon*] strongly supports the proposition that states primarily are responsible for defining what 'legitimate medical practice' is."[73] *Gonzales* states:

---

[69]21 C.F.R. § 1306.04.

[70]*Memorandum in Support of Motion to Dismiss*, Docket 32, p. 6.

[71]21 C.F.R. § 1306.04.

[72]*Prejean* at 801.

[73]*Id.*

20

Even though regulation of health and safety is primarily, and historically, a matter of local concern, there is no question that the Federal Government can set uniform national standards in these areas. In connection to the CSA, however, we find only one area in which Congress set general, uniform standards of medical practice. [That area is the uniform national standard for the medical treatment of narcotic addiction under *42 U.S.C. § 290bb-2a*.] This provision strengthens the understanding of the CSA as a statute combating recreational drug abuse, and also indicates that when Congress wants to regulate medical practice in the given scheme, it does so by explicit language in the statute.[74]

In its opinion in *Gonzales*, the Supreme Court stated that the CSA "bars doctors from using their prescription-writing powers as a means to engage in illicit drug dealing and trafficking as conventionally understood. Beyond this, however, the statue manifests no intent to regulate the practice of medicine generally."[75] The Court recognized that the government utilizes state definitions of medical practice in prosecutions under the CSA.[76] When operating within this limited scope, courts

_____

[74]*Id.* (quoting *Gonzales v. Oregon*, 546 U.S. 243, 271-72 (2006) (internal citations and quotations omitted)).

[75]*Gonzales* at 270.

[76]*Id.* at 272.

have held that the regulation does not violate the Tenth Amendment.[77]


IV.  Conclusion

The charging statutes, 21 U.S.C. § 841 and 18 U.S.C. § 1347, are not void for vagueness either facially or as applied to the Defendant.  The Indictment does not violate the Tenth Amendment. Wherefore, the Magistrate Judge recommends denial of Defendant's *Motion to Dismiss Indictment*.  IT IS SO RECOMMENDED.

DATED this ___11th___ day of December, 2009, at Anchorage, Alaska.


 /s/ John D. Roberts_____
JOHN D. ROBERTS
United States Magistrate Judge


Pursuant to F.R.Cv.P. 72(b) and 28 U.S.C. § 636(b)(1), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON on Monday, December 28, 2009**.  Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981).  The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000).  Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented

---

[77]*See Gonzales* at 269-270; *see also Moore*, 423 U.S. 122, 143 (1975).

22

in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **NOON on Thursday, January 7, 2010.** The parties shall otherwise comply with provisions of F.R.Cv.P. 72(b).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).