UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        Plaintiff,<br>   vs.<br><br>GARY S. GERLAY,<br><br>        Defendant. | 3:09-cr-085-JWS-JDR<br><br>**INITIAL**<br>**RECOMMENDATION**<br>**REGARDING**<br>**MOTION TO DISMISS**<br>**[Counts 6 - 9]**<br><br>(Docket No. 33) |

Defendant **Gary Gerlay** moves pursuant to the Due Process Clause of the Fifth Amendment for an order dismissing Counts 6 through 9 of the Indictment due to pre-indictment delay. Docket 33. Gerlay filed a supporting brief at Docket 34, exhibits under seal at Docket 74, and a supplemental memorandum at Docket 97 with exhibits under seal at Docket 100. The motion is opposed by the government. Docket 54. The government did not respond to the defendant's supplemental memorandum in support of dismissal of Counts 6 through 9. For reasons discussed hereafter, the motion lacks merit.

Counts 6 through 9 allege that Dr. Gerlay prescribed controlled substances to "David K" intentionally, not for legitimate medical purpose and intentionally outside the usual course of professional medical practice.[1] David K died approximately 20 months after the DEA began its investigation and prior to the indictment in this case.[2]

Counts 6 through 9 of the indictment allege that on four separate occasions, beginning December 13, 2004 (Count 6) to March 7, 2005 (Count 9), Gary S. Gerlay unlawfully distributed and dispensed OxyContin and Hydromorphone and Xanax to David K in violation of 21 U.S.C. § 841(a)(1) and aiding and abetting statute, 18 U.S.C. § 2. Gerlay claims that David K would have been a favorable witness to the defense as to the intent requirement of Counts 6 through 9. According to Dr. Gerlay, beginning in May 2003, David K complained to his primary treating physician of pain in his back as a result of a work related injury. The treating physician referred David K to Dr. Gerlay for management of "unresolved and persistent pain" related to the injury. Prior to the indictment, David K. was examined

---

[1] Dr. Gerlay was initially charged in an indictment in Case No. 3:08-cr-00061-JWS-JDR, returned May 20, 2008. That indictment was dismissed based on pre-trial motion practice, and the instant indictment was filed in a new proceeding.

[2] The memorandum in support of the motion to dismiss states that it is unknown to the defense what happened to David K after April 2005, other than he eventually moved to Arizona.

by a psychiatrist, Dr. Alan Abrams, hired by an insurance company, and Gerlay complains that David K can no longer be subjected to further psychiatric testing.[3]

## Discussion

The U.S. Supreme Court decisions that have examined due process claims granted on pre-arrest delay in federal criminal prosecutions have relied on the Due Process Clause of the Fifth Amendment. That Amendment provides: "[n]o person shall . . . be deprived of life, liberty, or property without due process of law . . . ."

The Fifth Amendment requires the dismissal of an indictment, even if it is brought within the statute of limitations, if the defendant can prove that the government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice. *See Arizona v. Youngblood*, 488 U.S. 51, 57, 109 S. Ct. 333 (1988).

The seminal case is *United States v. Marion*, 404 U.S. 307, 92 S. Ct. 455 (1971), wherein the court addressed whether a defendant's federal constitutional rights are violated by an extensive delay between the occurrence of a crime and the indictment or arrest of a defendant for the crime. The defendants in *Marion* were charged with having engaged in a fraudulent business scheme

---

[3] The government does not argue that Dr. Gerlay's treatment had anything to do with David K's death.

beginning in March 1965 and ending January 1966. The court held that no actual prejudice to the conduct of the defense had been alleged or proved, and there was no showing that the government intentionally delayed prosecution to gain some tactical advantage over *Marion* or to harass him.

The grand jury that investigated the scheme in *Marion* was not impaneled until September 1969 and an indictment was not returned until March 1970. The court noted that the primary guarantee against bringing overly stale charges is the applicable statute of limitations. In the instant case, the approximate 53 to 56 months of delay in charging Dr. Gerlay from the dates of the alleged criminal acts in 6-9 of the *Indictment* (December 13, 2004 - March 7, 2005), falls within the five-year statute of limitations.

In *United States v. Lovasco*, 431 U.S. 783, 97 S. Ct. 2044 (1977), the court discussed the decision in *Marion* and rejected Lovasco's argument that if a defendant suffered actual prejudice from the pre-trial delay, this alone was sufficient proof to establish a due process violation. *Lovasco* makes clear that the holding in *Marion* that proof of prejudice is generally a necessary but not a sufficient element of a due process claim, and that court's the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused. Id. at 790. Thus, from *Marion* and *Lovasco*, a two-prong test has emerged to address a due process claim for pre-arrest delay. First, the defendant must show actual prejudice from the delay

and, second, the prejudice alone is not sufficient to show a violation of due process where the delay was due to the government's continuing investigation of the crime.

As a threshold matter, then, Gerlay must establish that he suffered actual prejudice from the delay. *United States v. Horowitz*, 756 F.2d 1400, 1405 (9th Cir. 1985). In *United States v. Mays*, 549 F.2d 670 (9th Cir. 1977), the court held that the defendant must not only show loss of a witness and/or evidence, but must also demonstrate how that loss is prejudicial to him and such proof must be definite and nonspeculative. Id. at 677. "The assertion that a missing witness might have been useful does not show the 'single actual prejudice' required by *Marion*." *United States v. Galardi*, 476 F.2d 1072, 1075 (9th Cir.), *cert. denied*, 414 U.S. 839 (1973).

Dr. Gerlay complains that he's prejudiced because he is unable to seek a second psychiatric opinion of David K now that David is deceased. He does not explain in his memorandum why he is so highly prejudiced because he cannot seek a second psychiatric examination of David K now that David Deceased. Dr. Gerlay complains that the demise of David K is prejudicial because he can no longer offer David K's testimony regarding the physician/patient relationship. Dr. Gerlay was not David K's primary physician. It was Dr. Thornquist. On or about January 2004, Dr. Cohen, a neurosurgeon, performed an operation on David K to fuse damaged vertebrae. There is no showing that either of these physicians is deceased or unavailable to be called as a witness.

Dr. Gerlay claims that he cannot "test" Dr. Abrams medical opinions. The motion to dismiss does not identify what part of Dr. Abrams' report the defendant particularly seeks to rebut. Dr. Abrams examined David K as a psychiatrist, not a pain management specialists. Dr. Abrams is not deceased and he can be examined as a witness at trial. The defendant has a copy of Dr. Abrams November 2004 report. The defendant's intent to act is at issue not the patient's. Pain is somewhat subjective. The pain treatment physician is called upon to render a professional opinion based in part on what the patient tells him. The defendant has access to medical records at the pain management clinic to address the accuracy of David K's report of prejudice to his physicians.

No showing has been made that the government knew that David K was going to die prior to the indictment being returned. It is mere speculation as to what David K may have told the government investigators relative that led to Counts 6 through 9 of the indictment.

Dr. Gerlay argues that the government has obtained an important tactical advantage with the demise of David K because the patient is not available to explain why he trusted Dr. Gerlay as a caring physician. The issue for trial is whether the physician engaged in the criminal conduct alleged not whether the patient trusted him as a physician. The defense is not without some evidence on the issue since they have records filled out by David K and submitted to Dr. Gerlay.

There is other evidence to establish that Dr. Gerlay attempted to perform his role as a physician. The untimely demise of David K does not deprive the defendant of making these arguments in support of his defense.

As a second element to be considered, *Mays* identifies the length of the delay. The court must balance this aspect in conjunction with the reason for the delay. A defendant enjoys no constitutional right to be arrested at the first instance probable cause may exist. The defendant admits in his memorandum that he does not know why the government ultimately "sat on this case" for more than three years (until May 2008) to file an indictment. As discussed in *Mays*, the courts have traditionally granted the government leeway in the decisions as to the timing of arrests and indictments. 549 F.2d at 678. This does not mean that intentional delays for improper purposes will be sanctioned.

In the Ninth Circuit, negligent conduct can also be considered in the mix. Where the defendant has established actual prejudice due to an unusual lengthy government-caused pre-indictment delay, it is incumbent upon the government to provide the court with its reason for the delay. The Government argues that they spent much of the pre-indictment time working to negotiate a settlement with Mr. Gerlay and his seven different attorneys and waiting on the state medical board proceedings to conclude. *See Opposition*, Docket 54 at pp. 3-4. Dr. Gerlay's attorneys did not address the "ensuing federal investigation" or make his

medical files available until after the conclusion of the state hearings and Dr. Gerlay's move to New Mexico. *Id.*

Dr. Gerlay insinuates that the Government has an upper hand in the investigation as to Counts 6-9 by filing them after David K's death. He does not, however, provide evidence that the Government is culpable either through intentional misconduct or negligence. Government agents had a right to work on the Gerlay case during the pre-indictment interim. David K's medical records were not the only ones under review. Dr. Gerlay has not shown with any particularity what evidence has been lost due to the delay or the way in which such evidence would have helped his defense against the charges. Dr. Gerlay has not made any substantial, convincing showing as to what the testimony of David K would be. Revealing only the subject matter of the decedent witness's testimony and not its actual content is insufficient. 549 F.2d at 679-680.

The defendant is not without information about David K. The defendant's memorandum in support of his motion to dismiss provides a factual basis about David K. *See* document 34, pp. 2-6. The defense has access to Dr. Abrams report and presumably would be able to cross-examine him on his report should he testify.

A claim that a witness's testimony is unavailable because he is deceased is no better of itself than a claim that the witness's memory has dimmed;

such does not constitute actual prejudice. Gerlay simply speculates as to what evidence has been lost and how he may be adversely prejudiced at trial by that loss. The burden of showing prejudice is on the defendant. *United States v. Moran*, 759 F.2d 777, 780-81 (9th Cir. 1985) (citing *United States v. Lovasco*, 431 U.S. 783, 789 (1977).

Testimony from David K as to why he trusted Dr. Gerlay as a caring physician is not particularly probative of the elements of the charges including whether Dr. Gerlay unlawfully supplied drugs. Nor is the lack of testimony from David K to tell the jury "what it means to writhe in pain, day after day, with no physician to at least try to help." The clinic's medical records make this point.

It is mere speculation that David K would have been able to testify and would have testified that Dr. Gerlay acted in good faith as suggested by defendant's motion. Dr. Gerlay argues that his differing medical opinion is not a basis for a crime under Title 21 or the standard to convict a practitioner under § 841(a) as set forth in *Feingold*, 454 F.3d 1001, 1008 (9th Cir. 2006). This is a matter best left to the fact finder at trial.

In summary, both the government and the defendant may have lost potential evidence with David K's demise. Gerlay has failed to establish nonspeculative actual prejudice due to the absence of testimony from David K. He has not shown any culpability on the government's part, either in the form of

intentional misconduct or negligence to merit a judgment in favor of dismissal on Counts 6 through 9. Accordingly, the Motion to Dismiss should be denied. IT IS SO RECOMMENDED.

DATED this 1st day of April, 2010, at Anchorage, Alaska.

    /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON, Thursday, April 15, 2010**. The failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **NOON, Thursday, April 22, 2010**. The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).