UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | 3:09-cr-00085 JWS |
| ) | |
| vs. ) | ORDER AND OPINION |
| ) | |
| GARY S. GERLAY, ) | [Re: Motions at dockets |
| ) | 128, 130, 132, and 134] |
| Defendant. ) | |
| ) | |

## I. MOTION PRESENTED

At dockets 128, 130, 132, and 134 defendant Gary S. Gerlay asked the court to foreclose presentation of certain testimony and information at trial. He filed supporting memoranda at dockets 129, 131, 133, and 135. Plaintiff filed a combined response at docket 152. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

Defendant Gary S. Gerlay was at all relevant times a practicing physician. He purchased a pain management clinic, Aurora Pain Management, from another physician. Gerlay operated the clinic from November of 2002 through April of 2005. Gerlay is charge with 64 counts of illegally distributing controlled substances and aiding and abetting such distribution in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 841(b)(2), and 2. He is also charged with 33 counts of health care fraud in violation of 18 U.S.C. §§ 1347(1) and 2.[1]

---

[1]Indictment at doc. 2.

# III.  DISCUSSION

## A.  Rules 402, 403, and 404(b)

Each of the pending motions requires the court to consider and apply Federal Rules of Evidence 402, 403, and 404(b).  Rule 402 provides that evidence which is not relevant shall be excluded.  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[2]

Rule 403 instructs that relevant evidence is to be excluded when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Obviously, the rule requires the court to balance the probative value of the evidence offered against any of the listed factors which might require its exclusion.  Consideration of undue prejudice requires, among other things, evaluation of the possibility that the evidence might induce the jury to decide the case on a purely emotional basis.[3]

Rule 404(b) provides in pertinent part:

> Evidence of other crimes, wrong, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

The Ninth Circuit considers Rule 404(b) to be a rule permitting the inclusion of evidence, rather than a rule necessarily requiring the exclusion of evidence.[4]  Unless the evidence tends to prove only a propensity to do something, it is admissible.[5] However, evaluating whether evidence is admissible under Rule 404(b) also requires the court to consider

---

[2] Fed. R. Evid. 401.

[3] *See*, Fed. R. Evid. 403, 1972 Advisory Committee Notes.

[4] *E.g., Boyd v. City and County of San Francisco*, 576 F.3d 938, 947 (9th Cir. 2009).

[5] *United States v. Jackson*, 84 F.3d 1154, 1159 (9th Cir. 1996).

-2-

whether it should be excluded under the Rule 403 balancing test.[6]  Moreover, the Ninth Circuit has explained that to be admissible, evidence of a prior act must be probative of a material point, must be supported by enough proof to allow the jury to conclude that the defendant actually did engage in the prior act, must not be too remote in time, and must exhibit sufficient similarity to conduct involved in committing the crime charged.[7]

**B.  Motion at Docket 128**

In his first motion to exclude evidence, Gerlay asks the court to exclude "Testimony that Dr. Gerlay kept, carried, or possessed a firearm on the premises of Aurora Pain Management [and testimony that he] kept, carried, or possessed a baseball bat on the premises of Aurora Pain Management."[8]  Gerlay contends that this evidence should be excluded under Fed. R. Evid. 402, 403, and 404(b).

The court turns first to Gerlay's assertion that the evidence should be excluded under Rule 402, because it is not relevant.  Both parties recognize that in the most fundamental sense the government's case against Gerlay depends on proving that when prescribing controlled substances Gerlay acted in the capacity of an illegal drug dealer rather than a physician.[9]  The government says that the evidence at trial will show that Gerlay kept large amounts of cash on the premises of the Aurora Pain Management clinic, that many of his patients/customers were drug addicts, and that like other drug dealers, Gerlay kept weapons to defend himself and his money.  Assuming the government can show cash was kept on the premises and that drug-addicted persons came to the clinic to obtain drugs, the evidence that Gerlay kept a gun and a

---

[6]*United States v. Mayans*, 17 F.3d 1174, 1183 (9th Cir. 1994).

[7]*United States v. Hollis*, 490 F.3d 1149, 1153 (9th Cir. 2007).

[8]Doc. 128 at p. 1.

[9]In his trial brief Gerlay puts it this way: "The government must prove beyond a reasonable doubt that the physician intended to act as a drug pusher rather than as a doctor attempting in good faith to treat a medical condition."  Doc. 153 at p. 2.  The government sums up its burden in these words: "In other words, the government must prove that Gerlay was just a drug dealer."  Doc. 152 at p. 3.

baseball bat at the clinic is relevant to the proposition that he was operating a drug distribution business, not a medical clinic.

Gerlay argues that even if relevant, the evidence should be excluded under Rule 403, because of "the danger of unfair prejudice, undue delay and waste of time."[10] Here, where the government is attempting to prove beyond a reasonable doubt the remarkable proposition that a practicing physician stooped to the level of illicit drug dealing, it is obvious that the prosecution's case must be made methodically and thoroughly. In that context, Gerlay's possession of the firearm and the baseball bat at the clinic has fairly significant probative value. The testimony required to establish these facts would not be very lengthy. The risk of undue delay and waste of time does not substantially outweigh the probative value of the evidence. Gerlay's concern about undue prejudice presents a closer question. Nevertheless, the court concludes that Gerlay's possession of these means of self defense would not cause the jury to form an unfairly prejudicial opinion of Gerlay, much less consider convicting him because of an emotional reaction to the fact that he kept the weapons on the premises. While the evidence does support the inference the government will ask the jury to draw about Gerlay's activities, it is also entirely consistent with perfectly legal and rational behavior. The possession of weapons, especially firearms, as a means of self defense is widely accepted in Alaska as a fundamental right of all citizens, and it is a right which is frequently exercised. The evidence is not excludable under Rule 403.

Defendant's rule 404(b) objection also fails. The evidence is relevant to Gerlay's possible intent to profit from the illicit distribution of drugs, as well as his preparation and plan for dealing with circumstances which might easily arise from doing so. The evidence is material to the proposition that Gerlay was a drug dealer. Gerlay does not assert that the government cannot present sufficient evidence to show that he possessed the weapons. The conduct challenged is not remote in time–indeed, it is contemporaneous. Finally, the challenged conduct is sufficiently similar to the conduct

---

[10]Doc. 129 at p. 6.

-4-

Case 3:09-cr-00085-JWS   Document 158   Filed 07/19/10   Page 4 of 12

to be expected of one dealing illicit drugs. If Gerlay requests an appropriate limiting instruction concerning this evidence, the court will give it.

**C. Motion at Docket 130**

Defendant Gerlay's second motion *in limine* asks the court to exclude the following evidence:

> Testimony alleging suspicions that persons in the lobby and in the parking lot of Aurora Pain Management engaged in drug dealing;
>
> Testimony that tends to characterize the patients of Aurora Pain Management as drug dealers and drug addicts;
>
> Testimony that tends to characterize Aurora Pain Management as an easy place to obtain controlled substances.[11]

In its response the United States implicitly concedes the merits of Gerlay's request to exclude reputation and character evidence of those who frequented the premises of Aurora Pain Management: The government represents that in its case in chief it will not put on evidence of any "suspicions," nor will it put on any evidence of the reputation or character of Gerlay or his clinic.

The government does assert that if in his own case Gerlay presents evidence of his good character or reputation, the government might then choose to present contrary character evidence on that topic in rebuttal. Presentation of such evidence in rebuttal would be subject to Rule 404(a). That is not a matter which must be addressed in the context of the present motion.

Gerlay's motion is susceptible to a broader reading, because direct evidence that some of his patients/customers were drug dealers or addicts would support inferences about the nature of Aurora Pain Management. Recognizing the potential reach of the motion, the government says it plans to offer direct testimony that Gerlay's patients/customers included drug dealers and drug addicts and urges that such testimony should be admissible.

---

[11]Doc. 130 at p. 1.

Such testimony would be relevant, for it would tend to make it more likely that Gerlay himself was a drug dealer. A Rule 402 objection to the evidence therefore lacks merit.

The court next considers Rule 403. Evidence that Gerlay's patients/customers included drug dealers and addicts would have significant probative value, in the context of this case. The court will not permit excessively lengthy testimony or cumulative evidence on these points, so there is no risk of undue delay or waste of time. Nor would such testimony risk confusing or misleading the jurors, for it is easy enough to separate the concept that some of the patients/customers were drug dealers or addicts from the central question, which is whether Gerlay was a drug dealer. The evidence is not inflammatory or unfairly prejudicial. The fact that Gerlay accepted drug dealers and addicts as patients supports unsavory inferences about his activities, but the evidence is also consistent with a physician's duty to care for those who suffer, regardless of the fact that they are not nice people. Gerlay has not shown that direct testimony that some of his patients were drug dealers and addicts is freighted with sufficient prejudice to substantially outweigh the probative value of the evidence.

With respect to Rule 404(b), the testimony would be material to a determination of whether or not Gerlay was a drug dealer. Defendant does not contend that sufficient proof to show such persons were accepted in his practice is unavailable. The evidence would relate to facts that are not remote in time. In substance the evidence is sufficiently similar in nature to conduct associated with the charge that Gerlay was just a drug dealer. Direct evidence that Gerlay accepted drug dealers and addicts as patients/customers would tend to show opportunity, intent, plan, and absence of mistake in connection with the provision of controlled substances. If Gerlay requests an appropriate limiting instruction, the court will give it.

**D. Motion at Docket 132**

Defendant Gerlay's motion at docket 132 asks the court to exclude the following evidence:

> Testimony that Dr. Gerlay was rude and/or abusive to Aurora Pain Management uncharged patients;

> Testimony that Dr. Gerlay was rude and/or abusive to Aurora Pain Management staff;
>
> Testimony that patients were sometimes required to remain in the waiting room for long periods of time;
>
> Testimony that patients were sometimes required to remain in the waiting room for long periods of time to obtain prescriptions without seeing Dr. Gerlay.[12]

The testimony that Gerlay was rude or abusive to his staff is not relevant and will be excluded under Rule 402. It is common knowledge (at least among those with any significant contact with members of the medical community) that the treatment of nurses and other staff by a few physicians is curt and demanding to the point of appearing rude or even abusive. That Gerlay may have been a member of that subset of doctors has no bearing on whether he was practicing medicine or simply dealing drugs. No testimony will be admitted in the government's case in chief on the topic of Gerlay's mistreatment of staff.[13]

Gerlay's allegedly rude and abusive behavior toward his patients/customers and neglect or disdain for the value of their time is relevant. Such behavior would support an inference that Gerlay had no interest in treating patients, but rather was interested only in exchanging access to illegal controlled substances for his customers' money. Rule 402 does not preclude admission of this testimony.

Turning to Rule 403, it is noted that Gerlay's rude, abusive, and disdainful behavior toward his patients/customers has significant probative value. Were Gerlay a drug dealer, this is how one would expect him to often treat his customers. Were Gerlay actually practicing medicine, his interest in promoting and maintaining his medical practice would be inconsistent with such conduct.

---

[12]Doc. 132 at p. 1.

[13]The court assumes that if Gerlay's former staff members testify against him, defense counsel might wish to pursue Gerlay's treatment of staff on cross-examination. Of course, if that were to occur, the government could touch on the topic in re-direct.

-7-

Gerlay argues that evidence putting him in a bad light regarding his handling of his patients/customers "would be prejudicial because it would invoke an emotional response from a jury that Dr. Gerlay is an abusive or rude person."[14] He cites *United States v. Bradley*[15] and *United States v. Hodges*[16] to support his argument. In *Bradley*, the defendants were charged with conspiracy to kill a witness set to testify against one of their associates in a federal criminal trial. The Court of Appeals found the trial judge abused his discretion in admitting evidence of the defendants' involvement in a prior homicide, concluding that the evidence about the prior slaying had little probative value, was "vague," as to one defendant was almost without any factual link, and related to a motive dissimilar to the motive allegedly behind the pending charge against the defendants.[17] In *Hodges* the appellate court found the evidence at issue to have "attenuated" probative value, to be somewhat remote in time, and to be ambiguous while having substantial potential to unfairly prejudice the defendant.[18] Their facts being so different from the case at bar, neither *Bradley* nor *Hodges* offers guidance helpful to resolving the instant motion.

The court agrees that evidence Gerlay was rude, abusive, and disdainful may put him in a bad light with the jury. However, the fact that he may have exhibited such characteristics is hardly so damning as to support the proposition that the jury would be misled or confused, much less convict him on the basis of an emotional reaction to the behavior. There are plenty of people who are rude and abusive in their personal relationships who are not criminals. Jurors have enough common sense to understand that. Any prejudice associated with this evidence does not substantially outweigh its

---

[14]Doc. 133 at p. 6.

[15]5 F.3d 1317, 1321 (9th Cir. 1993).

[16]770 F.2d 1475, 1480 (9th Cir. 1985) (quoting *United States v. Bailleaux*, 685 F.2d 1105, 1111 (9th Cir. 1982)).

[17]*Bradley*, 5 F.3d at 1320-21.

[18]*Hodges* 770 F.2d at 1479-80.

probative value.  Under the balancing test required by Rule 403, this evidence is admissible.

The evidence at issue tends to show Gerlay intended to run a drug dealing operation, not a medical clinic.  It also tends to show that he did not just make an occasional mistake in prescribing controlled substances.  Thus, the evidence is probative of material points.  Gerlay does not argue the government lacks sufficient proof to show that Gerlay behaved in the manner alleged.  The evidence relates to behavior that is not too remote in time, and it is evidence that is sufficiently similar to the behavior of one engaged in the charged criminal activity.  This evidence is admissible under Rule 404(b).  If defendant asks for an appropriate limiting instruction, the court will give it.

**E.  Motion at Docket 134**

In his motion at docket 134, Gerlay cites Rules 402, 403, and 404(b) as the basis for his request that the court exclude three categories of evidence:

> Testimony regarding Dr. Gerlay's billing practices;
>
> Testimony that Dr. Gerlay billed for patient office visits when the patient did not see Dr. Gerlay;
>
> Testimony that Dr. Gerlay imposed fines for patients who allegedly misused or abused medication.[19]

In his motion papers Gerlay asserts that the evidence in question falls far beyond "[t]he central question to be resolved by the jury [which] is whether the prescriptions given to the four patients named in the indictment were intentionally issued outside the usual course of professional practice and were intentionally issued for no legitimate medical purpose."[20]  That is correct, but presents a somewhat stilted description of what this case is all about.  As previously noted, both parties consider the government's fundamental burden in this case to be proving beyond a reasonable doubt that Gerlay was acting as a drug dealer rather than a doctor.

---

[19]Doc. 134 at p. 1.

[20]Doc. 135 at p. 5.

The evidence which falls within the categories Gerlay seeks to exclude has been fleshed out by the government:

> Staff and patients will testify that Gerlay almost universally billed code 99213, which they and the government's expert will say is a level of service rarely if ever provided by Gerlay and one not reflected in the patient files. Patients who were never even seen by Gerlay were charged $150-$200 for an office visit that either never took place–even according to Gerlay's records–or was a fleeting superficial "meeting" lasting a few moments which always resulted in a prescription for controlled substances. As the defense knows, the government's expert has said that this is clearly outside the usual course of professional practice.
>
> The same expert was shocked by Gerlay's practice of "fining" patients who exhibited addictive behavior, such as urinalyses not showing prescribed drugs, showing illegal drugs, and offering drug–seeking excuses for early refills such as lost or stolen medicine. Uncharged patients will say that this practice was widespread, and that Gerlay ignored their behavior and wrote for additional drugs anyway.[21]

This evidence tends to support the proposition that Gerlay was operating the clinic to make money by providing access to controlled substances for money, rather than providing medical care. It is directly relevant to the charges of illegally distributing controlled substances and will not be excluded under Rule 402. This evidence may not provide direct support for the health care fraud charges as Gerlay contends. However, because the evidence is obviously relevant to the distribution charges, it will not be excluded under Rule 402. Moreover, the evidence provides context within which the fraud charges should be considered. It gives the context within which the government contends Gerlay was acting–operating a business to make money rather than engaging in the legitimate practice of medicine.

With respect to Rule 403, it must be noted that these matters are highly probative of what Gerlay was doing. His argument that this evidence "could confuse the jury by introducing evidence about billing practices unrelated to preauthorization for payment

---

[21] Doc. 152 at p.7.

for controlled substances "[22] goes only to the health care fraud charges, and if an appropriate limiting instruction is requested, the court will give it. With respect to the distribution charges, Gerlay urges that an extensive examination of the billing practices would waste time and divert the jury's attention from whether the prescriptions for the four named patients were legitimate. To be sure, it is possible that the government might attempt to present too much information on the matter, but the court can and will control the extent of testimony. Objecting that getting into these areas at all is a waste of time and will mislead the jury is so lacking in merit as to be nearly frivolous. This evidence will not be excluded under Rule 403.

The evidence easily passes muster under Rule 404(b). It is probative of Gerlay's motive, intent, preparation, and plan for the operation of the clinic. It also tends to show the absence of mistake or accident in writing the prescriptions. The evidence therefore is correctly described as going to material matters. Far from suggesting that the government cannot present enough proof to establish these matters, Gerlay's papers display concern that there is too much proof. The activities in question are contemporaneous to the charged conduct. Finally, the evidence is virtually identical to conduct one would expect to see in the course of committing the distribution charges set out in the indictment within the context of a business disguised as a medical practice.

## IV. CONCLUSION

For the preceding reasons:

1. The motion at docket 128 is **DENIED**;

2. The motion at docket 130 is **GRANTED in part and DENIED in part** as discussed in Section III. C;

---

[22]Doc. 135 at p. 6.

-11-

Case 3:09-cr-00085-JWS   Document 158   Filed 07/19/10   Page 11 of 12

3. The motion at docket 132 is **GRANTED in part and DENIED in part** as discussed in Section III. D; and

4. The motion at docket 134 is **DENIED**.


DATED at Anchorage, Alaska, this 19th day of July 2010.


                                                /s/ JOHN W. SEDWICK
                                    UNITED STATES DISTRICT JUDGE